NOT FOR PUBLICATION

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

————————————————————            :
MELISSA LOSO,                                        :
                                                                  :            Civil No. 13-2583 (RBK)
                                            Plaintiff,           :
                                                                  :
                          v.                                    :            **OPINION**
                                                                  :
                                                                  :
CAROLYN W. COLVIN,                             :
Acting Commissioner of Social Security    :
                                                                  :
                                          Defendant.        :
————————————————————            :

**KUGLER**, United States District Judge:

Plaintiff Melissa Loso appeals the decision of the Administrative Law Judge ("ALJ")

denying her Disability Insurance Benefits ("DIB") under Title II, and Social Security

Supplemental Income ("SSI") under Title XVI of the Social Security Act (the "SSA" or the

"Act").  For the reasons set forth below, the decision of the Commissioner is vacated and

remanded to the ALJ for further reconsideration.

**I.        BACKGROUND**

Loso, a 31-year-old woman, submitted an application for DIB and SSI on November 15,

2010.  In her application, Loso alleged that she had been plagued by various disabilities since

May 5, 2010.  Specifically, Loso has suffered from neck and spine impairments, chronic pain,

headaches, a shoulder injury, amputation of the little finger on her right hand, and insomnia.

Loso's prior work history includes working as a toothpaste tube filler and a manager at

McDonald's.  (Admin. Rec. ("R.") at 25.)  She also has her GED.  (Id.)  Loso alleges that in her

current disabled state she cannot sustain employment because there is not a lot she can do.  (R. 774.)  Specifically, Loso has trouble with prolonged sitting, standing, and lifting.

### A.  Alleged Physical and Mental Limitations

Loso's physical ailments originated on January 20, 2005.  At that time, Loso was injured while trying to lift a pallet and wrap it with some sort of "Saran Wrap" material in the course of her employment with Sheffield Laboratories in New London, Connecticut.  (R. 473, 767.)  One week later, Loso suffered a partial amputation of her right pinky finger while operating a machine at work.  (R. 766.)  Further, during one of her shifts in March 2010, Loso sustained an injury to her neck, which resulted in severe pain, numbness, and tingling radiating from her neck into her hand.  (R. 767-68.)  Loso submitted a claim to workers' compensation for all three of these injuries.  (R. 491-93, 767.)

From January 2005 until May 2006, Loso was a regular patient at Lawrence and Memorial Hospital Occupational Health Center.  Throughout this time, Loso was treated for persistent shoulder and neck pain.  At times her condition seemed to improve, but then her pain would return.  (See generally R. 376-458.)  She was prescribed physical therapy, various pain medications, and muscle relaxers, prohibited from lifting more than a certain amount of weight, and was advised to do minimum overhead work.  (Id.)  Loso's treating physicians and nurse practitioners noted that as of early 2006, they were not able to move forward with Loso's care prior to receiving the results of an independent medical evaluation ("IME") arranged by her workers' compensation carrier. (Id. at 387, 389.)  She continued to remain on modified duty. (Id.)

Loso underwent an IME by Dr. Gordon Zimmerman in December 2005.  (Id. at 484-85.)  Although Dr. Zimmerman did not evaluate Loso's cervical issues, he noted that she "appear[ed]

2

to have symptoms consistent with an impingement syndrome." (Id. at 485.) He also stated that "it would be reasonable to proceed with further workup including diagnostic subacromial injection," advised that "[s]he would have light duty work capacity as of the date of [his] examination[, and] [i]f in fact she responds to the injection, she could become a candidate for further workup including a diagnostic arthroscopy and possible acromioplasty." (Id.) Finally, Dr. Zimmerman noted that Loso reported to him that her neck sprain resolved. (Id.)

In May 2006, Loso's began seeing Jeffrey Bash, M.D. of Middlesex Orthopedic Surgeons, P.C. (Id. at 493.) Over the next few months, Dr. Bash treated Loso for her neck injury and observed, among other things, tenderness over the spinous process in the cervical spine which went through her cervical spine into her thoracic spine, as well as increased pain at the end point of rotation, slight degeneration, early forms of arthritis, and herniated disks. (Id. at 492-93.)

In October 2006, Steven Wei, M.D. performed arthroscopic surgery on Loso's left shoulder. (Id. at 486.) On November 21, 2006, Loso was again seen by Dr. Bash. (Id. at 489.) During this visit, Dr. Bash noted that Loso's shoulder was improving post-surgery and that she had recent cervical epidural injections to help with pain management. (Id.) He also stated she had permanent work restrictions of no lifting greater than 10 lbs and that she had a permanent partial impairment of her cervical spine of 8%. (Id.)

Subsequently, Loso underwent surgery in an effort to treat her persistent neck pain. This surgery was performed by Stanley Pugsley, M.D. and consisted of an anterior cervical discectomy/osteophytectomy C3-4 with allograft and Venture plating. (Id. at 503-06.) In the interim, Loso was seen by Beverly Genader, APRN ("N.P. Genader") for anxiety and for severe headaches that Loso alleged had been problematic since her neck injury. (R. 675, 680-87, 691-

3

92.)  According to Loso, her September 2007 neck surgery did not alleviate her symptoms.

Specifically, she testified:

> I have a harder time turning my head faster now.  I know it makes my migraines more.
> Now anytime it's cold out or the pressure changes, I can feel it because of the metal that
> they put in there.  It didn't help.  I shouldn't have done that.  But I figured a 60/40 chance
> was better than nothing.

(Id. at 775.)

As of July 2008, Loso began attending a number of physical therapy sessions.  However,
in September, there was still no improvement in Loso's pain, and further physical therapy
sessions, as well as medication, were doing little to alleviate her symptoms.  (Id. at 548-94.)  In
November 2008, Loso was still experiencing discomfort in her neck and had additional
discomfort in her mid-back.  (Id. at 497-98.)  During this time, Loso was treated by her neck
surgeon, Dr. Pugsley, and she also saw John Paggioli, M.D. for pain management, Richard L.
Papantonio, M.D., and Laurence Radin, M.D. of Neurological Group, P.C. for her chronic
headaches.  (Id. at 507-516, 530.)  Plaintiff attended another physical therapy session in
December 2008, but indicated as of December 4, 2008, that she did not want to pursue physical
therapy because it had not eased her pain.  (Id. at 543-47.)  Indeed, Dr. Paggioli noted at one
point that he was out of ideas because his treatment recommendations did not resolve Loso's
neck pain and headaches.  (Id. at 511.)  Dr. Radin, along with Andrea Bartels, APRN, continued
to treat Loso for her chronic headaches well into 2009.  (Id. at 525-30.)

In addition to her medical treatment for her physical pain, Loso also underwent a
psychological evaluation in December 2008 by David Zita, Ph.D.  In his report, Dr. Zita
concluded that there was reasonable support for the presence of, among other things, "mixed
anxiety and depression."  (Id. at 520-23.)  He also concluded, however, that Loso's speech was

clear, coherent, articulate and expressive, and her thought processes were rapid, but essentially logical, goal-directed, and normal.  (Id. at 521-23.)  Further, although Loso reported bouts of anxiety, she admitted that they lasted "a half-hour or so" and she was able to sooth herself by writing in a journal.  (Id. at 522.)

As of August 2009, Loso's treating medical source, N.P. Genader, opined to the Connecticut Department of Social Services that Loso's return to work was unlikely due to her ongoing problems with her back and neck, as well as her chronic headaches.  (Id. at 535-40.) Specifically, Loso's neck and back pain prevented prolonged sitting and standing, as well as lifting.  (Id. at 537.)  Further, her prognosis was noted as poor and, despite having surgery and being compliant with all recommended and prescribed treatments, her pain persisted.  (Id.)

From 2009 to 2010, Loso continued to have pain issues.  She visited the Emergency Department at Lawrence & Memorial Hospital on December 19, 2009, for acute lumbar pain. (Id. at 815.)  She saw neurology specialists for her neck pain and headaches, and was referred to physical therapy for her upper and lower back pain.  (Id. at 667.)  Although she was prescribed Paxil to treat depression, this drug had no impact on her chronic pain; indeed, medications prescribed from all antidepressant groups also made no improvement in her depression or chronic pain and additional physical therapy sessions had no effect.  (Id. at 664, 667.)  In fact, Loso complained that she felt that her depression had worsened, and entered counseling in 2010. (Id. at 663, 651.)  Further, efforts to associate with pain management groups stalled due to problems with Loso's insurance.  (R. 649.)  Loso moved from Connecticut to New Jersey in August 2010.

In 2011, Loso continued to seek treatment for her various ailments.  Medical records demonstrate that in February she was examined by Ronald Bagner, M.D. at the Commissioner's request.  (Id. at 23, 695-96.)  Dr. Bagner noted as follows:

> patient ambulates without difficulty, gets on and off the examining table without difficulty, and dressed and undressed without assistance.  She is not uncomfortable in the seated position during the interview, does not use a cane or crutches, and can heel and toe walk.  There is a normal range of movement in the cervical area, there is an anterior scar from the previous surgery.  The left shoulder shows a normal range of movement.  There is a traumatic amputation of the distal right pinky . . . . The lower back shows a normal range of movement.  There is no pain in straight leg raising.

(Id. at 696.)  In May 2011, Loso visited the Cape Regional Medical Center Emergency Department where she was evaluated by Domenic Coletta, M.D.  (Id. at 700.)  Dr. Coletta diagnosed Loso with a lumbosacral strain, i.e., a muscle injury, and sciatica.  (Id. 700-01.) An MRI performed by Siddharth Prakash, M.D. noted a disc bulge at L4-L-5, and broad-based herniation.  (Id. at 715.)  X-rays of Loso's cervical spine taken by Amit Patel, M.D. revealed post-op changes of the cervical spine with fusion at C3-4 with mild to marked degenerative disc disease at C4-5 and C5-6 with mild narrowing of the neural foramen.  (Id. at 720.)

As of June 2011, Savithri Bhamidipati, M.D. noted in a report to the Cape May County Board of Social Services that Loso was not able to work full or part time and her limitations included "standing, walking, climbing, stooping, bending, and lifting." (Id. at 713)  Dr. Bhamidipati indicated that Loso would be unable to work for approximately 120 days.  (Id. at 713, 738.)  As of October 2011, Loso reported to Marion Patterson, M.D. that her back pain was worsening and her headaches remained unchanged.  (Id. at 727.)  Loso was also evaluated by Manish K. Singh, M.D. at the Jersey Institute of Neuroscience who further documented Loso's pain issues.  (Id. at 741-57.)

### B.  Administrative Law Judge Decision

Loso applied for DIB and SSI benefits on November 15, 2010, alleging a disability onset date of May 5, 2010.  The Commissioner of Social Security ("Commissioner") denied her application on March 3, 2011, and again on reconsideration on June 1, 2011.  Loso requested a hearing before an ALJ, which occurred on December 13, 2011.  The ALJ also denied Loso's application finding that she was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the SSA, and the Appeals Council refused to review the case, thus making the ALJ's decision the final decision of the Commissioner.  Loso filed the instant action on April 26, 2013.

In making his determination, the ALJ first decided that Loso was not performing substantial gainful activity from May 7, 2010, the alleged onset date, to February 14, 2012, the date of the ALJ's decision.  (R. at 21.)  He then noted that Loso suffered from the following severe impairments:  cervical spine fusion, lumbar spine herniated nucleus pulposis, left shoulder arthroscopy, partial amputation of the right fifth finger,  headaches, and obesity.  However, the ALJ found that the following alleged impairments were not severe at any time:  right knee and leg problems, arthritis and joint pain in the hands and shoulders, depression, anxiety, sleep disorder, chest pain, and right shoulder problem.  (Id. at 21-22.)  Specifically, he stated that "[t]here is no objective medical evidence relevant to the period documenting the duration, existence or severity of functional limitations caused by these alleged impairments, for 12 consecutive months."  (Id.)  He found that none of Plaintiff's ailments or combination of ailments meets or medically equals one of the impairments listed in the regulations for determining disability and blindness.  (Id. at 22); see also 20 C.F.R. § 404, Subpart P, Appendix 1.

In assessing Loso's residual functional capacity, the ALJ concluded that although Loso could not perform any work that required her to lift objects over her head, he did believe that she could perform sedentary work with the following limitations:  she could never perform overhead reaching, she could occasionally climb ramps and stairs, and she could never climb ladders or scaffolding.  (Id. at 22.)  In evaluating Loso's RFC, the ALJ relied on Dr. Ronald Bagner's consultative examination on February 8, 2011, that was requested by the Social Security Administration.  (Id. at 23.)  He further concluded that Loso's own testimony "concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment."  (Id.)  Specifically, Loso testified that "she is actively seeking work, has taken a writing class from 2009-2010, and sometimes takes her dog for a walk."  (Id.)  Further, after moving to New Jersey, Loso obtained no treatment after seven months because, per her testimony, she did not have insurance.  (Id.)  Also, in her Activities of Daily Living Form, Loso reported

> that she is able to get her children ready for school, clean the house, do laundry, vacuum, and do dishes until the children get home from school.  She then starts dinner and helps them with their homework.  She is able to care for her dog.  The claimant states that she is able to drive a car, shop for food and clothing, and has hobbies including reading, walking, and playing games.  She participates in outdoor sports, but 'not as much any more'.  She states that she can lift 10 pounds, can walk one mile before she has pain, and can walk one half mile without stopping.  She socializes with others.

(Id.)

The ALJ then referred to the following pieces of evidence:  (1) N.P. Genader's notes, which stated that while Loso has some pain, exercise does not cause an increase in her pain symptoms; (2) an emergency room report dated May 2, 2011, which indicated that Loso's physical exam showed no motor or sensory deficit; (3) a note from Dr. Savithri Bhamidipati dated May 9, 2011, stating that Loso's examination findings were largely normal and that on

May 18, 2011, normal exam and that "today she has no pain"; and (4) an MRI of Loso's lumbar spine on May 19, 2011, revealed disc bulge and herniation with no direct cord compression.  (Id. at 23-24.)

The ALJ concluded that Dr. Bhamidipati's findings deserved little weight because on September 1, 2011, he stated that Loso could not work due to back and neck pain, but that it was "unknown' as to whether she was a likely candidate for SSI.  In the ALJ's opinion, this notation rendered Dr. Bhamidipati's opinion equivocal.  (Id. at 24.)  Further, because the same opinion was given on June 13, 2011, the ALJ concluded that the objective record weighed strongly against Dr. Bhamidipati's assessment of Loso's employability, when his own treatment notes indicate Loso's mostly negative examination findings.  (Id.)

Ultimately, although the ALJ found that Loso was unable to perform any of her past relevant work, he concluded that she could perform jobs that existed in significant numbers in the national economy, and that she was not disabled pursuant to Medical Vocational Rule 201.28.  (Id. at 26); see also 20 C.F.R. § 404, Subpart P, Appendix 2.  Consequently, the ALJ held that Loso was not under a disability within the meaning of the SSA from May 7, 2010, through the date of his decision on February 14, 2012, and thus was not eligible for SSI or DIB benefits.

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the Court is limited to determining whether the decision was supported by substantial evidence after it reviews the administrative record as a whole.  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Morales v. Apfel, 225

F.3d 310, 316 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 422 (3d Cir. 1999)).  If

the Commissioner's determination is supported by substantial evidence, the Court may not set

aside the decision, even if the Court "would have decided the factual inquiry differently."

Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft, 181 F.3d at 360)).

Nevertheless, the reviewing court must be wary of treating "the existence [or nonexistence] of

substantial evidence as merely a quantitative exercise" or as "a talismanic or self-executing

formula for adjudication."  Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983). The Court must

set aside the Commissioner's decision if the Commissioner did not take into account the entire

record or failed to resolve an evidentiary conflict.  Schonewolf v. Callahan, 972 F. Supp. 277,

284-85 (D.N.J. 1997) (citing Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978)).

Furthermore, evidence is not substantial if "it constitutes not evidence but mere conclusion," or if

the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."  Wallace v.

Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent, 710 F.2d at

114).  As such, the Court's review of the Commissioner's final determination is a "qualitative

exercise without which our review of social security disability cases ceases to be merely

deferential and becomes instead a sham."  Kent, 710 F.2d at 114.

## III.    DISCUSSION

Loso claims that she is entitled to DIB and eligible for SSI, as provided for in Title II and

Title XVI of the SSA.  Because the term "disability" has essentially the same definition for both

programs, the case law interpreting the meaning of "disability" under Title II is applicable to a

determination of disability under Title XVI.  See 42 U.S.C. § 423(d); 42 U.S.C. § 1382c(a)(3).

Eligibility for benefits under the Act is conditioned upon compliance will all relevant

requirements of the statute.  DIB may not be paid unless the claimant meets the insured status

10

requirements of 42 U.S.C. § 423(c),[1] and SSI may not be paid unless the claimant meets the income and resource limitations of 42 U.S.C. § 1382a and § 1382b.  Further, a claimant must demonstrate an inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The statute further requires that an individual will be determined to be under a disability

> only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

Id. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner conducts a five-step inquiry to determine whether a claimant is disabled, and therefore, eligible for SSI and disability benefits.  20 C.F.R. §§ 404.1520, 416.920; Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004); Plummer v. Apfel, 186 F.3d 422 (3d Cir. 1999).  The Commissioner must first determine whether the claimant is currently engaged in a "substantial gainful activity."  If the claimant is currently engaged in substantial gainful activity then she is ineligible for SSI and DIB.  20 C.F.R. §§ 404.1520(a), 416.920(a).[2]  Then, the Commissioner ascertains whether the claimant is suffering from any severe impairment, i.e., an

---

[1] The ALJ found that Loso met these requirements through December 31, 2010.  (R. 21, 162-72.)

[2] This work involves significant physical or mental activities that are done for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.

impairment that "significantly limits [the claimant's] physical or mental ability to do basic work activities." Id. §§ 404.1520(c), 416.920(c).[3]

If the Commissioner finds that the claimant's condition is severe, the Commissioner evaluates whether it meets or equals a listed impairment. Id. §§ 404.1520(d), 416.920(d). If the claimant's physical or mental conditions meet or equal the criteria for any impairment listed in the Act, then it is presumed that the claimant is disabled and entitled to benefits. If not, the Commissioner will then evaluate the claimant's residual function capacity ("RFC"), which is a measure of the physical and mental limitations the claimant's impairments may cause on what she can do in a work setting, id. §§ 404.1545(a)(1), 416.945(a)(1), and whether the RFC would entitle the claimant to return to her "past relevant work," id. §§ 404.1520(e), 416.920(e).

If the claimant is capable of returning to past relevant work, then he or she is ineligible for SSI benefits. If the ALJ finds the claimant is unable to resume past relevant work, the burden then shifts to the ALJ to demonstrate the claimant's capacity to perform work available "in significant numbers in the national economy," considering her RFC, age, education, and work experience. Jones, 364 F.3d at 503 (citing 20 C.F.R. § 404.1520(f)); see also 20 C.F.R. §§ 404.1520(g), 416.920(g).

Here, Loso asserts: (1) the ALJ failed to make a proper RFC determination because he did not engage in a function-by-function assessment and did not properly weigh Plaintiff's severe impairments of obesity, headaches, and finger amputation; (2) the ALJ failed to adequately assess Loso's mental impairments; (3) the ALJ failed to properly evaluate and weigh

---

[3] Basic work activities include "the abilities and aptitudes necessary to do most jobs." Bowen v. Yuckert, 482 U.S. 137, 167 n.6 (1987).

the medical evidence in the record; and (4) there is sufficient evidence in the administrative

record to support an award of summary judgment in Loso's favor.  The Court will address these

arguments in turn.

### A.      The ALJ's RFC Determination

The ALJ found that Loso could perform sedentary work, albeit with certain limitations;

specifically, Loso could not perform overhead reaching nor could she climb ladders or

scaffolding.  Loso objects to this finding arguing that the ALJ did not include a "function-by-

function" assessment, as required by Social Security Ruling ("SSR") 96-8P, as part of his

decision.  She further contends that her obesity, headaches, and finger amputation—impairments

that the ALJ found to be severe—were not considered in the RFC assessment.[4]

An RFC must factor in the claimant's "functional limitations or restrictions and assess his

or her work-related abilities on a function-by-function basis, including the functions in

paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945."  SSR 96-8P.  Paragraph (b)

of sections 404.1545 and 416.945 requires the ALJ to assess physical abilities, specifically the

impact that certain physical demands of work activity like sitting, standing, walking, lifting,

carrying, or other physical functions may have on the applicant's ability to do previous work or

other work.  Paragraph (c) addresses the impact that mental limitations and restrictions may have

on the applicant's ability to perform past work or other work.  Paragraph (d) is a more

generalized provision that accounts for work abilities affected by impairments that impose

---

[4] The ALJ also listed headaches under Loso's non-severe impairments.  (R. 22.)  Loso claims "[t]his inconsistency
only further convolutes the Opinion below and leaves unclear to subsequent reviewers the impact of this condition."
(Pl.'s Br. 11-12.)  While the Court acknowledges that these contradictory findings are confusing, Loso's headaches
will be considered severe for the purposes of her first argument.

environmental restrictions.  Importantly, the RFC assessment must "be accompanied by a clear and satisfactory explanation of the basis on which it rests."  Fargnoli, 247 F.3d at 41.  The mere fact that an ALJ did not "explicitly analyze each work related activity and the degree of claimant's limitation," however, does not mean that his explanation of the RFC did not comply with SSR 96-8P or other regulations.  See Rinker v. Barnhart, No. 03-294, 2004 WL 1527512, at *5 n.10 (E.D. Pa. May 28, 2004).  Where an ALJ details the type of work the claimant can perform based on her impairments in his RFC assessment, he has fulfilled his obligation under the regulations.  See, e.g., Money v. Barnhart, 91 F. App'x. 210, 216 (3d Cir. 2004).

First, as discussed above, the ALJ found that Loso could perform "sedentary work *as defined in* 20 C.F.R. § 404.1567(a) and 416.967(a)," and that she could perform this type of work so long as she limited her work performance to exclude overhead reaching, occasional climbing ramps and stairs, occasional stooping, kneeling, crouching, and crawling, and climbing ladders or scaffolding.  (R. 22 (emphasis added).)  By referencing 20 C.F.R. §§ 404.1567(a) and 416.967(a), in addition to supplying a caveat detailing Loso's limitations if she became employed in a sedentary position, the ALJ engaged in a sufficient function-by-function assessment under SSR 96-8P and other pertinent regulations.

Second, the ALJ did not ignore Loso's significant impairment of obesity. Obesity may act in combination with other impairments to increase the negative effects of those impairments on a claimant's employment capabilities.  20 C.F.R. § 404, Subpart P, Appendix I.  The ALJ considered the effect Loso's obesity had on her other impairments, and found that her impairments were not exacerbated by her obesity to the point that she was unable to work.  (R. 22.)  Loso identifies no countervailing evidence in the record indicating that her obesity

combines with any other ailment to make her less able to work.  Therefore, the ALJ's treatment of obesity in his RFC determination is supported by substantial evidence.

Third, however, Loso is correct that the ALJ did not adequately address her headaches and finger amputation in assessing her RFC; indeed, after classifying these injuries as severe, the ALJ failed to articulate why these injuries were severe, let alone address these impairments any further.  Accordingly, because all impairments, severe and non-severe, must be assessed when considering an RFC, see SSR 96-8P, the ALJ must address Loso's headaches and finger amputation as part of his step three findings and thus fully develop the record on remand.  See Burnett v. Commissioner, 220 F.3d 112, 119-20 (3d Cir. 2000) (standing for the proposition that when a decision regarding an impairment is left so devoid of evidence or some sign of the thought process the ALJ utilized, the Court is unable to conduct a "meaningful judicial review" and holding that ALJ's bare conclusion that the claimant's severe impairment did not meet the requisite level of severity in Appendix 1 was unsatisfactory).

### B.    The ALJ's Findings Regarding Loso's Mental Impairments

Next, Loso argues that the ALJ did not properly classify her mental impairments as severe.  (Pl.'s Br. 13.)  While an impairment must clear only a *de minimis* hurdle to be classified as severe in step two of the Commissioner's five-step analysis, the ALJ correctly decided that Loso's depression and anxiety were not severe and adequately explained his decision using substantial evidence.

In support of her argument, Loso points out that Dr. David Zita described her affect as being "anxious and irritable and somewhat resigned to her life's difficulties."  (Pl.'s Br. at 13; R. 522.)  However, Dr. Zita ultimately concluded that Loso has reasonable control over her anxiety and depression.  (R. 22, 523.)  Loso fails to cite to any report in the record stating that her

anxiety and depression significantly limits her ability to perform basic work activities.  Further, not only did the ALJ note that Loso drives and is able to take care of her family on a daily basis, (R. 22-23), he also highlighted Loso's admission in April 2010 that her depression was resolved and that she only wanted to pursue physical disability, (R. 22, 70).  Accordingly, based on the record before the Court, the ALJ's determination that Loso's mental impairments are not severe is supported by substantial evidence.  See Newell v. Commissioner, 347 F.3d 541, 546-47 (3d Cir. 2003) (slight abnormality that does not significantly limit basic work activities is not severe for purposes of step two).

### C.    The ALJ's Treatment of the Medical Evidence and Loso's Testimony

Loso's third argument is that the ALJ did not properly evaluate and weigh the relevant medical evidence of record.  While the ALJ need not mention every piece of relevant evidence in such a voluminous record as the one in this case, he must explain the weight he has given to obviously probative evidence.  See Fagnolli, 247 F.3d at 42; Gober, 574 F.2d at 776.  Furthermore, an ALJ must consider "all evidence available in [the claimant's] case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability."  42 U.S.C. § 423(d)(5)(B).  The twelve-month relevant period is based on the date the claimant filed her application, in this case November 15, 2010.  DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir. 1998).  Also, if there is "reason to believe that development of an earlier period is necessary," the ALJ must obtain and consider records covering that period.  20 C.F.R. § 404.1512(d).

In weighing medical evidence, the Third Circuit subscribes to the "treating physician doctrine."  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); Damm v. Commissioner, No.

16

09-2286, 2010 WL 3283515, at *10 (D.N.J. Aug. 18, 2010).  Under this doctrine, an ALJ "must give greater weight to the findings of a treating physician than to the findings of a physician who has examined the claimant only once or not at all."  Id.  An ALJ may reject a treating physician's opinion only when contradicted by medical evidence, and he must not reject the opinion "for no reason or for the wrong reason."  Morales v. Apfel, 225 F.3d 310, 317-18 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).

Here, the ALJ did not weigh all probative medical evidence from within the relevant period, relied heavily on the opinion of a one-time state agency medical reviewer, while discounting the opinions of several of Loso's treating healthcare providers, and failed to state his reasons for rejecting certain evidence in the record.

First, given the chronic nature of Loso's neck and back issues, and considering that they began well before the start of the statutory relevant period in this case, the ALJ should have expanded the record to obtain a better overview of Loso's health problems.[5]  Loso points out that the ALJ ignored her treating records from Lawrence Memorial Hospital from July 2008 to July 2010, and she correctly argues that these records provide a critical window into her chronic neck and back problems and the frequency of her headaches.[6]  (Pl.'s Br. at 15; R. at 541-94, 615-94.) Indeed, the ALJ only mentions two records from this period, one of which dealt with a medical issue irrelevant to the instant case, i.e., Loso's treatment for poison ivy.  (R. at 23.)

_____

[5] In addition to her neck and back problems, Loso argues that the ALJ overlooked records from Neurological Group, P.C., which treated Loso for headaches from October 2008 to May 2009, and from Dr. Singh, who also treated her for headaches in October and November 2011.  (R. 525-34, 741-57.)  The ALJ is expected to address these records on remand.

[6] Loso was seen during many of her visits by N.P. Genader.  The ALJ may consider the records produced by a nurse practitioner in addition to those supplied by licensed physicians.  20 C.F.R. § 416.913(d)(1).

Second, the ALJ accorded little weight to the records of Drs. Bhamidipati and Patterson partly because he felt that their opinions were "created to support the procurement of state benefits." (R. 24.) Although an ALJ is clearly permitted to choose between conflicting medical opinions, he must support his decision to discount the opinions of treating physicians with something more substantial than an unjustified suspicion that a claimant and his or her treating doctors are in "cahoots" in an effort to procure state aid. See Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (while an ALJ is entitled to make a credibility determination, he may decide to reject the opinion of a treating physician "only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion"); Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993) (standing for the proposition that the Commissioner must give greater weight to medical assessment of treating physician than to findings of a physician who examined the claimant only once or not at all).

Finally, in concluding that Loso's testimony during the December 13 hearing deserved little weight, the Court also finds that the ALJ did not properly explain how and why he reached this conclusion. Ordinarily, an ALJ must give great weight to a claimant's subjective testimony when that testimony is supported by medical evidence. Burnett, 220 F.3d at 122; Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984). Although an ALJ is entitled to reject a claimant's testimony, his decision to do so "must contain a thorough discussion and analysis of the objective medical and other evidence." Schaudeck v. Commissioner, 181 F.3d 429, 433 (3d Cir. 1999). Here, the ALJ concluded as follows: Loso's statements regarding "the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23.) However, based

on the record before the Court, it seems that the ALJ discounted Loso's testimony based on his own findings, and not on any specific contrary medical evidence.

Consequently, on remand, the ALJ must consider the additional medical evidence in the record that addresses Loso's continuing neck and back issues, including evidence outside the minimum relevant twelve-month period.  See 20 C.F.R. § 404.1512(d).  Furthermore, in light of the fact that the ALJ has identified certain contradictory medical evidence in the record, he must provide a careful evaluation and sufficient explanation to support why Loso's treating physicians' opinions were not given controlling weight.  Griffies v. Astrue, 855 F. Supp. 2d 257, 270 (D. Del. 2012).  Finally, the ALJ must identify what, if any, probative medical evidence he relied upon in finding that Loso's testimony regarding her symptoms and pain was not credible.

**D.      Summary Judgment**

Finally, Loso encourages the Court to grant summary judgment in her favor and argues that a remand will be contrary to the remedial spirit of the SSA.  In support of her argument that remand is inappropriate, Loso relies on Smith v. Califano, a case in which the Third Circuit granted summary judgment to the plaintiff only after the case had been pending for seven years, traveled up and down between the ALJ and district court twice (with a referral to a Magistrate Judge), and finally included an appeal to the Third Circuit.  637 F.2d 968, 971 n.1 (3d Cir. 1981). These arguments are unavailing.

Although the Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing," 42 U.S.C. § 405(g), remand is appropriate where the ALJ did not properly weigh the evidence or where the record

19

was not fully developed, <u>Kephart v. Richardson</u>, 505 F.2d 1085, 1090 (3d Cir. 1974); <u>Okunuga</u> <u>v. Astrue</u>, No. 09-2058, 2011 WL 445100, at *1 (D.N.J. Feb. 4, 2011).

Here, because the ALJ did not properly weigh all the probative evidence before him or fully develop the record as required by statute, summary judgment is inappropriate and the Court will remand the case to the ALJ for further proceedings consistent with this Opinion.  Further, as this matter is still in its infancy, the Court does not believe that a remand will be contrary to the remedial spirit of the SSA.

## IV.   CONCLUSION

For the reasons stated above, the decision of the Commissioner is vacated and the case **REMANDED** to the ALJ for proceedings consistent with this Opinion.  An appropriate order will issue today.


Dated:  4/17/2014                                        s/ Robert B. Kugler
                                                        ROBERT B. KUGLER
                                                        United States District Judge